UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JILL MEYER, M.D.,

                           Plaintiff,

                v.

STATE OF NEW YORK OFFICE OF MENTAL
HEALTH; CREEDMOOR PSYCHIATRIC CENTER;
and CATERINA GRANDI, M.D., Chief of Psychiatry/
Chair, Department of Psychiatry, Creedmoor
Psychiatric Center,

                          Defendants.

----------------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
12-CV-6202 (PKC)

PAMELA K. CHEN, United States District Judge:

      Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6). The amended complaint alleges employment discrimination and hostile work environment based on race, age and gender. Because Plaintiff's amended complaint sufficiently alleges violations of Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, and New York City Human Rights Law, and because Plaintiff has sufficiently alleged the participation of the individual Defendant, Dr. Caterina Grandi, in the State and City human rights law violations, Defendants' motion is denied as to all counts of the amended complaint, except Count I. Count I, which alleges a violation of the Age Discrimination Employment Act, is dismissed on the basis of sovereign immunity. Lastly, the hostile work environment component of Plaintiff's Title VII claims is dismissed as time-barred.

BACKGROUND

A.   Relevant Procedural History

Plaintiff Jill Meyer filed this action on December 18, 2012. (Dkt. 1.) In response to Defendants' request to file a motion to dismiss, pursuant to FRCP 12(b)(1) and 12(b)(6), Plaintiff requested, and was granted, leave to file an amended complaint. The amended complaint was filed on March 25, 2013. (Dkt. 11.)

In her amended complaint, Plaintiff asserts claims of employment discrimination and hostile work environment pursuant to the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Executive Law §§ 296 and 297 ("NYSHRL"), and the New York City Administrative Code § 8-107 ("NYCHRL"), based on her employment, and application for employment, at psychiatric facilities operated by Defendant State of New York Office of Mental Health. Plaintiff's Title VII and ADEA violations are alleged only as to OMH and Creedmoor; and her NYSHRL and NYCHRL violations are alleged only as to Dr. Grandi. Specifically, the amended complaint sets forth the following causes of action:

Count I:     ADEA violation based on age by OMH and Creedmoor

Count II:    NYSHRL violation based on age by Dr. Grandi[1]

Count III:   NYCHRL violation based on age by Dr. Grandi

Count IV:    Title VII violation based on gender by OMH and Creedmoor

Count V:     NYSHRL violation based on gender by Dr. Grandi

---

[1] Although Defendants, in their reply brief, appear to construe Plaintiff's NYSHRL claims as extending to OMH and Creedmoor (*see* Dkt. 21 at 2, 8–10), neither the plain language of the amended complaint nor Plaintiff's opposition brief (*see* Dkt. 25 at 13–15) supports that conclusion. Accordingly, the Court interprets the amended complaint as alleging NYSHRL and NYCHRL violations only as to Dr. Grandi.

2

Count VI:       NYCHRL violation based on gender by Dr. Grandi

Count VII:      Title VII violation based on religion by OMH and Creedmoor

Count VIII:     NYSHRL violation based on religion by Dr. Grandi

Count IX:       NYCHRL violation based on religion by Dr. Grandi

B.   Relevant Factual History

Plaintiff is a psychiatric physician licensed to practice medicine in the State of New York. (Dkt. 1 ¶ 20.)[2] Plaintiff is a Jewish female born in 1953 (currently 60 or 61 years old). (Dkt. 1 ¶ 23.) Plaintiff is a former employee of the Defendants.

Defendants are the State of New York Office of Mental Health ("OMH"), Creedmoor Psychiatric Center ("Creedmoor"), and individual defendant Caterina Grandi ("Grandi"). Grandi, at all relevant times, was employed by Creedmoor as the Director of the Department of Psychiatry. (Dkt. 11 ¶ 19.) OMH is a New York State agency that operates Creedmoor, which is a psychiatric hospital located in Queens Village, New York. (Dkt. 11 ¶¶ 17, 18.) Plaintiff completed her post-graduate medical training in Brooklyn, New York in July 1982, and completed a fellowship in June 1993. (Dkt. 11 ¶ 22.) Plaintiff then was employed as a psychiatrist with the United States Veterans Affairs Administration for approximately 10 years. (Dkt. 11 ¶ 22.) In 2004, Plaintiff began working at a series of hospitals in the New York area. (Dkt. 11 ¶ 22.) Plaintiff was employed at Creedmoor from December 2004 until June 2005, when she resigned. (Dkt. 11 ¶ 26.) From July 2005 to January 2007, Plaintiff was employed as a psychiatrist at Bronx Psychiatric Center ("Bronx Psychiatric") in New York, which also is

---

[2] The facts set forth herein are from Plaintiffs' complaint. For purposes of this motion, the Court accepts these facts as true. *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007) (when deciding a 12(b)(6) motion for failure to state a claim, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party").

3

owned and operated by OMH. (Dkt. 11 ¶ 25.) Plaintiff generally received good performance reviews during her employment at both Creedmoor and Bronx Psychiatric. (Dkt. 11 ¶¶ 26, 28.)

Plaintiff alleges that during her employment at Creedmoor her director "fostered an environment that was needlessly demeaning and insulting to plaintiff," "making it increasingly difficult for plaintiff to work with [the director]." (Dkt. 11 ¶ 29.) After leaving Creedmoor, Plaintiff experienced a similar pattern of mistreatment and disrespect at Bronx Psychiatric, despite her satisfactory work performance. (Dkt. 11 ¶¶ 30–35.) The director of Plaintiff's unit at Bronx Psychiatric "would not even say 'Hello' to her and stated 'We will see how long you will be here.'" (Dkt. 11 ¶ 30.) Plaintiff alleges she was falsely accused of instigating an incident in which she was assaulted by a patient, after which she was told by a director, Nigel Bark, that she "'will not go anywhere else' and will 'never be permanent in the OMH system.'" (Dkt. 11 ¶ 31.) The staff also was disrespectful toward Plaintiff, and Dr. Bark "did nothing to correct the situation." (Dkt. 11 ¶ 32.)

During a meeting at Bronx Psychiatric in May 2006, Plaintiff was asked by the facility's director, Mr. Carmichael, whether she would accept a transfer from Bronx Psychiatric to another facility within the OMH network. Plaintiff declined the request. (Dkt. 11 ¶ 35–36.) Plaintiff was not given a reason for why she was being asked to transfer, except that, according to Mr. Carmichael, "they did not like [her] and wanted her out." (Dkt. 11 ¶ 36.) Also during that meeting, Mr. Carmichael said to Plaintiff that, "We are both minorities here at Bronx Psychiatric." (Dkt. 11 ¶ 35.)[3] Approximately eight months later, in January 2007, Plaintiff was terminated from Bronx Psychiatric, without being given a reason. (Dkt. 11 ¶ 37.) Plaintiff alleges that she was terminated based on her age, religion, and gender. (Dkt. 11 ¶ 40.)

---

[3] Plaintiff does not state any facts regarding Mr. Carmichael's religion, race, or national origin.

Since Plaintiff's employment at Bronx Psychiatric and Creedmoor, she has applied to various OMH-operated mental health facilities, but has not been hired, despite many vacancies at these facilities. (Dkt. 11 ¶ 41.) Most relevantly, in June 2011, more than four years after Plaintiff was fired, Creedmoor advertised openings for two psychiatrist positions, for which Plaintiff allegedly was qualified. (Dkt. 11 ¶¶ 43, 44, 47.) Plaintiff applied for the positions, and when she inquired of the status of her applications, she was informed by Defendant Grandi that she was an "excellent candidate," but that she would not be hired. (Dkt. 11 ¶¶ 48–50.) Plaintiff alleges, "[u]pon information and belief, [that] OMH hired other, less qualified, younger, male and non-Jewish candidates to fill the advertised vacancies." (Dkt. 11 ¶ 52.) She also "submits that she was not hired for either of the advertised vacancies because of her age, gender, and religion." (Dkt. 11 ¶ 53.)

## MOTION TO DISMISS STANDARD

To withstand a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The liberal notice pleading standard of FRCP 8(a) only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 570. Under FRCP 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* In evaluating a 12(b)(6) motion to dismiss, the district court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006). Nevertheless, a complaint must

contain enough factual material to "'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570), and it should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. That "it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . is not the test." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (citing *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).

The standard for reviewing a 12(b)(1) motion is essentially the same as the standard under 12(b)(6), but "a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Hoops v. KeySpan Energy*, 10-CV-2777(ADS), 2011 WL 846198, at *2 (E.D.N.Y. Mar. 8, 2011) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

*DISCUSSION*

I. <u>Sovereign Immunity under the ADEA</u>

Plaintiff concedes that OMH and Creedmoor cannot be held liable under the ADEA pursuant to the Eleventh Amendment's grant of sovereign immunity to the states and their agencies. (Dkt. 25 at 6.) Accordingly, Plaintiff's claim under the ADEA against OMH and Creedmoor,[4] alleged in Count I, is dismissed.

II. <u>Title VII Failure-to-Hire Claim</u>

In Counts IV and VII, Plaintiff alleges Title VII violations on the basis of gender and religion, respectively, against OMH and Creedmoor. (Dkt. 11 at 12–13, 15–16.)[5]

---

[4] Plaintiff does not bring claims under the ADEA against Dr. Dr. Grandi. (*See* Dkt. 11 at 9.)

[5] Although Plaintiff also asserts Title VII claims against the State Defendants, those claims are not dismissed on the basis of sovereign immunity, as the Supreme Court has held that Congress intended to abrogate the states' Eleventh Amendment immunity from suit under Title VII. *See*

Title VII prohibits discrimination in employment based upon certain protected characteristics, including gender, race, and religion. 42 U.S.C. § 2000e-2. Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on a protected characteristic. *Id.* A plaintiff alleging a Title VII violation must establish a prima facie case that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) there exist circumstances that give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Specifically, in order to sustain a discrimination claim based on a failure to hire, "a plaintiff must allege that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination." *Wang v. Phoenix Satellite Television U.S., Inc.*, 13-CV-218(PKC), 2013 WL 5502803, at *9 (S.D.N.Y. Oct. 3, 2013) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

However, "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510–11, 514; *see Boykin v. KeyCorp.*, 521 F.3d 202, 212 (2d Cir. 2008). Accordingly, at the pleading stage, a plaintiff is not required to plead facts sufficient to establish a prima facie case, and need only allege sufficient facts to give the defendant "fair notice of the basis for [plaintiff's] claims." *Boykin*, 521 F.3d at 212. Consistent with this approach, the Second Circuit has affirmed that there is no heightened pleading requirement in employment discrimination cases, even after *Twombly* and *Iqbal*. *See*

---

*Fitzpatrick v. Blitzer*, 427 U.S. 445, 449 n.2 (1976); *Davis*, 802 F.2d 638, 639 n.1 (2d Cir. 1986); *Brown v. N.Y. State Dep't of Correctional Servs.*, 583 F. Supp. 2d 404, 413 (W.D.N.Y. 2008).

*DiPetto v. U.S. Postal Serv.*, 383 Fed. App'x 102, 103 (2d Cir. 2010) (summary order).[6] As the Supreme Court explained in *Swierkiewicz*, imposing a heightened pleading standard in employment discrimination cases would be inappropriate because these cases frequently involve facts not available to a plaintiff at the pleading stage. *See Swierkiewicz*, 534 U.S. at 512 ("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."); *see also Leibowitz v. Cornell Univ.*, 445 F.3d 586, 592 (2d Cir. 2006) ("'[T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits[.]'") (quoting *Swierkiewicz*, 534 U.S. at 515). Under the pleading standard established in *Swierkiewicz*, a plaintiff need not allege with particularity facts regarding the nature of the defendant's state of mind or discriminatory intent. *See Swierkiewicz*, 534 U.S. at 510 (rejecting application of *McDonnell Douglas*'s prima facie case standard, including evidence regarding "circumstances that support an inference of discrimination").

Although Plaintiff's amended complaint sets forth facts directly supporting the first three elements of a prima facie employment discrimination claim—namely, that she was in one or more protected classes, she was qualified for her position, and she suffered an adverse employment action—she has not alleged any facts directly supporting her claim of discriminatory intent. However, this is not fatal to her case.

---

[6] However, neither the Second Circuit nor the Supreme Court has squarely addressed *Swierkiewicz*'s "continued viability in light of *Twombly* and *Iqbal*." *Schwab v. Smalls*, 435 Fed. App'x 37, 40 (2d Cir. 2011) (summary order).

Plaintiff's amended complaint is materially similar to the complaint upheld in *Boykin*.[7] In *Boykin*, the plaintiff sued a financial institution for denying her a home equity loan, alleging race and gender discrimination. *Boykin*, 521 F.3d at 204–05. The district court granted the defendant's motion to dismiss, in part, based on the insufficiency of the complaint's disparate treatment allegations, which the panel summarized as follows:

> [Plaintiff] Boykin alleged that (1) she was an African–American woman, who, on August 1, 2001, sought a loan from [Defendant] KeyBank for property in a predominantly African–American neighborhood; (2) she satisfied all of KeyBank's credit requirements and KeyBank conditionally approved the loan that day; (3) later the same day, KeyBank denied the loan, ostensibly on the basis of a policy against loaning to out-of-state applicants of which the loan officer said he had previously been unaware; (4) the true reason for the denial was her race, her sex and the racial makeup of the neighborhood in which the property was located; (5) similarly situated loan applicants who were not in the protected classes received loans and were treated more favorably throughout the loan application process; and (6) KeyBank relied on its policy as a pretext for discrimination, as evidenced in part by the fact that KeyBank did not offer Boykin the counseling and guidance it offers to other, non-minority loan applicants after denying their loans.

*Id*. at 214–15 (citations to complaint omitted).

Applying *Iqbal*'s "flexible plausibility standard," the panel found that Boykin's complaint was "sufficient to give KeyBank fair notice of her claim and the grounds upon which it rests." *Id*. at 213–14 (internal quotation marks omitted). More specifically, the panel found that "Boykin identified the particular events giving rise to her claim and alleged that she was treated less favorably than other loan applicants because of her race, her gender and location of her property, just as the complaint in *Swierkiewicz* provided the date and circumstances of the

---

[7] Notably, neither party referenced or discussed *Boykin* in their submissions. *Boykin* was decided after the Supreme Court's decision in *Twombly* and after the Second Circuit's decision in *Iqbal*, which was later affirmed by the Supreme Court. *See Boykin,* 521 F.3d at 213–14 (discussing impact of *Twombly* and *Iqbal* on pleading requirements under Fed.R.Civ.P. 8(a)). As in *Boykin*, the Court construes Defendants' motion to challenge Plaintiff's Title VII claims under both Federal Rules of Civil Procedure 12(b)(6) and 8(a).

plaintiff's termination and alleged that employees of other nationalities were treated differently than the plaintiff." *Id*. at 215.

The panel also rejected KeyBank's argument that Boykin had only alleged facts relating to KeyBank's preferential treatment of non-minority or male customers "upon information and belief" and did not contain any specific assertions or instances of preferential treatment. *Id*. at 215. The panel explained:

> [B]oth *Twombly* and *Erickson* [*v. Pardus*, 551 U.S. 89 (2007)] explicitly disavow that Rule 8(a) requires any plaintiff—let alone a *pro se* plaintiff—to plead "specific facts." *Twombly*, 127 S. Ct. at 1973–74; *Erickson*, 127 S. Ct. at 2200. Moreover, as Boykin correctly observes, the names and records, if any, of persons who were not members of the protected classes and were more favorably treated in the loan application process is information particularly within KeyBank's knowledge and control. Pleading on the basis of information and belief is generally appropriate under such circumstances. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff...."). Indeed, even in the context of Federal Rule of Civil Procedure 9's more stringent pleading requirements for pleading "special matters," we have held that "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993) (internal quotation marks omitted).

*Id*. at 215.[8]

Lastly, the panel held that Boykin "did not need to allege discriminatory animus for her disparate treatment claim to be sufficiently pleaded[,]" because "[t]here is no heightened pleading requirement for civil rights complaints alleging racial animus." *Id*. (citing *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298–99 (2d Cir. 2003)).

---

[8] The Court does not find that Boykin's status as a *pro se* litigant materially distinguishes *Boykin* from this case. The panel in *Boykin* focused its analysis on the substance of her complaint, only noting the plaintiff's *pro se* status to reinforce the conclusion that notice pleading was sufficient. *See Boykin*, 521 F.3d at 215.

The allegations in the amended complaint in this case are materially indistinguishable from those found sufficient to state a disparate treatment claim in *Boykin*. Plaintiff alleges that she is a member of a protected class under Title VII with respect to her gender and religion, and that she was qualified for the position for which she applied, but that she was not hired. (Dkt. 11 ¶¶ 40, 47, 53.) Plaintiff further alleges that she was not hired because of her religion and gender, and that, on information and belief, younger, non-Jewish males were hired instead. (Dkt. 11 ¶¶ 40, 52, 53.) As in *Boykin*, Plaintiff has alleged sufficient facts to "identif[y] the particular events giving rise to her claim" and has "alleged that she was treated less favorably than other [employees] because of her race, her gender and [her age], just as the complaint in *Swierkiewicz*" did. *Boykin*, 521 F.3d at 215. As was permitted in *Boykin*, Plaintiff has also alleged Defendant's discriminatory intent based "upon information and belief." *Id.*; *see, e.g.*, *Morales v. Long Island R.R. Co.*, 09-CV-8714(HB), 2010 WL 1948606, at *3 (S.D.N.Y. May 14, 2010) (finding sufficient a complaint containing "specific factual allegations as to events leading up to an adverse action, accompanied by conclusory allegations of discriminatory intent") (citing *Boykin*, 521 F.3d at 214–15). Accordingly, because Plaintiff's employment discrimination claim, based on disparate treatment, is "plausible on its face," Defendants' motion as to Counts IV and VII against OMH and Creedmoor is denied.

III.     Title VII Hostile Work Environment Claim

Defendants construe Plaintiff's amended complaint to also assert a hostile work environment claim against OMH and Creedmoor under Title VII. (Dkt. 16-1 at 13–16.) Although the amended complaint does not contain a specific count alleging hostile work environment, Plaintiff argues in her opposition to the motion that she is, indeed, alleging hostile work environment discrimination. (Dkt. 25 at 9.) Plaintiff's complaint includes allegations that

"the hospitals' administrations fostered an environment that was hostile, degrading and disrespectful to female, Jewish and older Psychiatrists" and that a director "fostered an environment that was needlessly demeaning and insulting to plaintiff." (Dkt. 11 ¶¶ 27, 29.) The Court therefore construes the complaint to assert hostile work environment discrimination.

To prevail on a claim of employment discrimination based on a hostile work environment, a plaintiff must establish two elements: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Petrosino v. Bell Atl.*, 385 F.3d 210, 220–221 (2d Cir. 2004) (citing *Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir. 2003)).

Defendants allege that Plaintiff's hostile work environment claim must be dismissed as untimely and because it was not alleged in Plaintiff's EEOC complaint. (Dkt. 16-1 at 13.) The Court agrees. Plaintiff's hostile work environment allegations relate to her prior employment at Defendants' hospitals. That employment ended in January 2007. The limitations period for filing an EEOC complaint of discrimination is 300 days. *Petrosino*, 385 F.3d at 219 ("An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act."); 42 U.S.C. § 2000e-5(e)). Plaintiff submitted the instant EEOC charge on or about February 22, 2012, approximately four years outside of the limitation period. (Dkt. 16-2.)

Plaintiff argues that her hostile work environment claims are not subject to dismissal under the "continuing violation" exception to Title VII. (Dkt. 25 at 13.) This argument is wholly without merit. There is no possibility that claims related to Plaintiff's prior employment, which was terminated in January 2007, could be deemed a "continuing violation" related to

Plaintiff's failure-to hire claim, which arose in June 2011, nearly four and a half years later. The hostile work environment that Plaintiff alleges occurred between July 2005 and January 2007 could not have "continued" during the 4-1/2 year period *when Plaintiff was not working for Defendants*. Plaintiff, however, is seeking to have the entire period from approximately July 2005 to June 2011 construed as a single, continuous period of a hostile work environment fostered by Defendants. Plaintiff cites no authority for this novel interpretation of the concept of "continuing violation." Indeed, such an interpretation would defeat the purpose of statutory time limits, which is to encourage plaintiffs who genuinely have been aggrieved to bring their claims expeditiously. *See, e.g.*, *United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("Statutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.") (quotations omitted). The time for Plaintiff to have filed suit based on a hostile work environment claim was within 300 days after the termination of her employment in January 2007. Accordingly, any hostile work environment claim alleged in Plaintiff's amended complaint is untimely and must be dismissed.

IV. NYSHRL and NYCHRL Claims

In Counts II, III, V, VI, VIII and IX, Plaintiff has alleged violations of NYSHRL and NYCHRL, on the basis of age, gender and religion, by Dr. Grandi. (Dkt. 11 at 10–18.)

A. Individual Liability under NYSHRL and NYCHRL

Both the NYSHRL and NYCHRL provide for individual liability of an employee where the employee actually participates in the conduct giving rise to the plaintiff's discrimination claim. *See Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 530 (S.D.N.Y. 1998) (citing *Tomka*

*v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (individual who "actually participates in the conduct that gives rise to a discrimination claim" can be held liable under NYSHRL)); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366–67 (S.D.N.Y. 2012) (citing *Banks v. Correctional Servs. Corp.*, 475 F. Supp. 2d 189, 200 (E.D.N.Y. 2007)) (individual liability may lie under the NYSHRL but is "limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees.") (citations and quotations omitted). Here, Plaintiff has alleged that Dr. Grandi participated in the decision not to rehire her in June 2011. (Dkt. 11 ¶¶ 45–53.) Because Plaintiff has alleged Dr. Grandi's participation in the discriminatory conduct, she can be held liable under NYSHRL.

Defendants argue, however, that Dr. Grandi cannot be held liable for the alleged NYSHRL violations because she is not an "employer" as defined under that law. (Dkt. 16-1 at 17–18; Dkt. 21 at 9–10.) Defendants cite *Patrowich v. Chemical Bank*, 63 N.Y.2d 541 (1984) in support of their position. In *Patrowich*, the Court of Appeals held that an individual cannot be held liable under the NYSHRL if "he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich*, 63 N.Y.2d at 542. Here, it is unclear whether Grandi was merely informing Plaintiff of the decision of another, or whether Grandi herself was in charge of personnel matters, such as hiring and firing. Nevertheless, Plaintiff alleges, on information and belief, that Grandi "was the official responsible for selecting the individuals to fill the advertised positions" at Creedmoor. (Dkt. 11 ¶ 45.) At the pleading stage, this is adequate to withstand dismissal of the claims against Grandi, who may be found to be an "employer" under the NYSHRL. The same is true for the NYCHRL. *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (applying the NYSHRL's standard

of analysis for aiding and abetting claims under the NYCHRL, because the pertinent language of the two laws is "virtually identical").[9]

B. Sufficiency of the NYSHRL and NYCHRL Claims against Dr. Grandi

The NYSHRL and NYCHRL proscribe discrimination in hiring on the basis of age, gender, and religion, among other traits. N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8-107. In federal court, although the substantive laws may vary, the same Rule 8(a) pleading standard applies to Plaintiff's state and local law claims as to her federal claims. *See, e.g.*, *Novak v. JPMorgan Chase Bank, N.A.*, 518 Fed. App'x 498, 501 (8th Cir. 2013) ("We apply federal pleading standards–Rules 8 and 12(b)(6)–to the state substantive law to determine if a complaint makes out a claim under state law.") (citing *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013)); *cf. Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 n.6 (2d Cir. 1991) (applying FRCP 9 to state law fraud claim); *Hoff v. WPIX, Inc.*, 11-CV-1591(LBS), 2011 WL 4809763, at 1 n.1 (S.D.N.Y. Oct. 11, 2011); *see also* FRCP 81(c)(1) (providing that Federal Rules of Civil Procedure apply to state actions removed to federal court).

NYSHRL claims are evaluated under the same rubric as Title VII claims, *see Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam), whereas the standard of review is more liberal for NYCHRL claims. *See Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).[10] The Court

---

[9] Although the NYCHRL has been amended since *Feingold*, and in some circumstances demands a separate analysis, the amendments did not limit liability under the NYCHRL, but rather expanded it. *See Mihalik*, 715 F.3d at 109. Accordingly, no additional analysis of the NYCHRL is necessary.

[10] For many years the NYCHRL was coextensive with the NYSHRL and Title VII, but, in 2005, the New York City Council amended the NYCHRL by passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"). The Restoration Act made clear that federal and state standards do not apply to NYCHRL claims, and that the NYCHRL was to be construed more broadly than those provisions. *Id.*; *see Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284,

15

finds that the allegation of Dr. Grandi's direct participation in the decision not to rehire Plaintiff, coupled with the Court's finding that the amended complaint states an employment discrimination claim under Title VII, satisfies the pleading requirements with respect to both the NYSHRL and NYCHRL claims against Dr. Grandi. In any event, because these claims arise from the same factual predicates as Plaintiff's Title VII claims against OMH and Creedmoor, which are proceeding in this matter, it is unnecessary to explore them in depth at this time. *See Audi Vision Inc. v. RCA Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943) ("[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue."); *Thibodeaux v. Travco Ins. Co.*, 13-CV-5599(ERK), 2014 WL 354656, *slip op.*, at *2 (E.D.N.Y. Jan. 31, 2014). Accordingly, Counts II, III, V, VI, VIII, and IX are not dismissed.

## *CONCLUSION*

For the reasons stated above, Defendant's motion to dismiss the amended complaint is granted with respect to Count I, and also with respect to any claim of a hostile work environment. The remainder of Plaintiff's claims may proceed.

SO ORDERED:

    /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: May 2, 2014
      Brooklyn, New York

---

295 (S.D.N.Y. 2012) (citing *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)) ("[T]he NYCHRL 'explicitly requires an independent liberal construction analysis in all circumstances, even where [s]tate and federal civil rights laws have comparable language.'").